IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**CARLOS J. MERCADO-RUIZ**

**Plaintiff,**

v.                                                    **CIVIL NO. 14-1372 (GAG)**

**CARLOS CARAZO, et al.,**

**Defendants.**

## OPINION AND ORDER

Carlos J. Mercado-Ruiz ("Plaintiff") brings suit pursuant to 42 U.S.C. § 1983 against Defendants, the Auxiliary Secretary of the Environmental Health Program ("EHP") Carlos Carazo ("Carazo"), Secretary of the Department of Health ("the DOH") Ana C. Rius-Armendariz ("Rius"), Interim Regional Supervisor of Mayagüez Eduardo Padilla-Zapata ("Padilla"), and Assistant Secretary of Human Resources of the DOH Hermes Rivera-Polanco ("Rivera").[1] (Docket No. 7 ¶¶ 13-16.)  Plaintiff alleges that Defendants terminated his position as the Mayagüez regional supervisor of the Environmental Health Program ("the EHP") of the Puerto Rico DOH because of his political affiliation, in violation of the First and Fourteenth Amendments to the United States Constitution. Id. ¶ 1. Plaintiff also brings state law claims pursuant to Puerto Rico Law No. 100 of June 30, 1959, P.R. LAWS ANN. tit. 29, §§ 146-151 *et seq.* ("Law 100"), Article 1802 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 5141 ("Article 1802") and the Puerto Rico Compensation System for Work-Related Accidents Act, P.R. LAWS ANN. tit. 11, §

---

[1] On October 27, 2014, the Court denied Defendants' Motion to Dismiss but dismissed as defendants the Secretary of Justice of Puerto Rico and the Commonwealth of Puerto Rico.  (See Docket No. 29.)

**Civil No. 14-1372 (GAG)**

7 ("CSWAA"). Id. ¶¶ 4, 48. Presently before the Court is Defendants' Motion for Summary Judgment. (Docket No. 67.) After considering the motion, all replies and responses thereto, the Court **GRANTS IN PART and DENIES IN PART** the Motion for Summary Judgment at Docket No. 67. (See Docket Nos. 67-68; 76-77; 89-90.)

I. **Relevant Factual and Procedural Background**

Plaintiff is a DOH employee serving as Aguadilla regional supervisor of the EHP. (Docket Nos. 7 ¶ 11; 68 ¶ 4.) He is a member of the New Progressive Party ("NPP"). (Docket No. 7 ¶ 6.) Defendants are members of the Popular Democratic Party ("PDP").[2] (Docket No. 7 ¶ 7.)

In June, 2010, the former Secretary of the DOH, Lorenzo González-Feliciano ("González"), appointed Plaintiff to also serve as the acting regional supervisor of the EHP for Mayagüez. (Docket No. 68 ¶ 3.) In April, 2011, Plaintiff became the dual-regional supervisor of Mayagüez and Aguadilla when the DOH consolidated the management of Mayagüez and Aguadilla. Id. ¶¶ 7-8, 13. On April 27, 2011, the DOH Budget Office issued a Regular Position Change Report indicating Plaintiff's new responsibilities to supervise the Mayagüez EHP, which had no budgetary effect. (Docket Nos. 68 ¶ 13; 68-5 at 1-3.)

Prior to Plaintiff's appointment as Mayagüez regional supervisor, Plaintiff's predecessor Edyins Rodríguez-Millán ("Rodríguez") appealed his termination to the Public Service Appellate Commission ("PSAC") and obtained a favorable decision permitting his reinstatement as Mayagüez regional supervisor. (Docket No. 68 ¶¶ 5-6.) Defendants contend that in order to comply with the PSAC's decision, the DOH cancelled the management consolidation of Mayagüez and Aguadilla. Id. ¶ 22. González sent Plaintiff a letter notifying him of the cancellation and

---

[2] Defendants do not dispute Carazo, Rius and Rivera's PDP membership, and do not address Padilla's political affiliation in their pleadings. (Docket Nos. 68 ¶ 51; 90 ¶ 8.)

**Civil No. 14-1372 (GAG)**

instructing him to return to work only as the Aguadilla regional supervisor. (Docket Nos. 68 ¶¶ 26, 29; 68-9 at 1.) González also requested that Plaintiff facilitate transition to Rodríguez to disintegrate the consolidation of Mayagüez and Aguadilla management.[3] (Docket Nos. 68 ¶ 33; 68-10 at 1.) However, in June, 2011, Rodríguez was activated to the National Guard. (Docket No. 68-15 at 1-2.) As a result, Plaintiff was appointed to fill his vacancy and became the acting regional supervisor of Mayagüez in September, 2011, while retaining his regional supervisor position in Aguadilla. (Docket No. 68 ¶¶ 41.) Plaintiff's letter of appointment specified that the assignment would not affect his employee status or monthly salary, and that his appointment was solely in an "acting capacity." (Docket No. 68-14 at 1.)

When the PDP administration took office in January, 2013, Rius became the Secretary of the DOH. (Docket No. 68 ¶¶ 50-51.) Carazo became the Auxiliary Secretary of the EHP and Plaintiff's supervisor. Id. ¶¶ 52-53. On May 1, 2013, Plaintiff attended a meeting with Carazo. (Docket Nos. 77-1 at 7; 90 ¶ 2.) The parties dispute the substance of this meeting. Plaintiff contends that Carazo told Plaintiff that Carazo intended to replace him with a PDP supporter. (Docket No. 77-1 at 7.) Defendants contend that Carazo explained to Plaintiff that he wanted Plaintiff to return to Aguadilla as the regional supervisor so that the management of regional operation would be more efficient. (Docket No. 90 ¶ 2.) Plaintiff alleges that after the meeting, Carazo and Padilla, Plaintiff's deputy in the Mayagüez office, conspired to force Plaintiff to resign as Mayagüez regional supervisor by bypassing his authority, taking control of work-related functions, excluding him from important communications, and publicly humiliating him at events with other DOH employees. (Docket Nos. 77 ¶¶ 4, 5, 9; 77-1 at 8-10.)

---

[3] In August, 2011, Plaintiff appealed the cancellation of the regional integration to the PSAC, which has not rendered a decision. (Docket No. 68 ¶¶ 36-40.)

3

**Civil No. 14-1372 (GAG)**

Defendants deny attempting to force Plaintiff out of the Mayagüez office. (Docket No. 90 ¶¶ 4-5, 9-10, 15.) Rius states she never met with Plaintiff and deferred to Carazo's decision to transfer Plaintiff back to Aguadilla. (Docket No. 68-20 ¶ 4.) In February, 2014, Rius informed Plaintiff by mail that his position as the Mayagüez regional supervisor was terminated and that he would return to Aguadilla as regional supervisor. Id. Plaintiff contends that he was emotionally distraught from the termination and underwent treatment for a period of time, during which Padilla was appointed the interim regional supervisor for Mayagüez. (Docket No. 77 ¶ 17.) Plaintiff's termination letter cited "service need" at the EHP as the reason for his termination. (Docket No. 68-16.) Instead, Plaintiff claims that his termination resulted from Defendants' political animus. (Docket No. 76 at 8.)

**II.    Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may

4

establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).  If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences.  Id. at 255.  Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence.  Id.  Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayagüez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**III.   Legal Analysis**

In his Section 1983 claim, Plaintiff alleges that Defendants discriminated against him based on his affiliation with the NPP in violation of the First Amendment, and that Defendants deprived him of his property interest in continued employment without due process of law in violation of the Fourteenth Amendment.  (Docket No. 76 at 3-10.)

5

A. Eleventh Amendment Immunity and Qualified Immunity

As a threshold matter, Defendants argue that Plaintiff's claims against those in their official capacities are barred by the Eleventh Amendment.[4] (Docket No. 67 at 17-19.) Importantly, Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Caraballo v. Puerto Rico, 990 F. Supp. 2d 165, 173 (D.P.R. 2014) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989)). The Eleventh Amendment bars lawsuits for monetary damages against a state agency or a state official acting in his official capacity. Id. 173-74. Puerto Rico is considered a state for Eleventh Amendment purposes. Id. at 174. (citing Irizarry-Mora v. Univ. of Puerto Rico, 647 F.3d 9 (1st Cir. 2011)). The Eleventh Amendment, however, does not prevent suits against state officials for monetary damages to be paid out of their own pockets. Kentucky v. Graham, 473 U.S. 159, 166 (1985). The Eleventh Amendment also does not bar official capacity suits against state officials for injunctive or declaratory relief. Maloy v. McClintock, Civ. No. 10-1890, 2011 WL 2911800, at *4 (D.P.R. 2011) (citing Ex parte Young, 209 U.S. 123, 159-60 (1908)).

In this case, Rius, the Secretary of the DOH, and Carazo, the Auxiliary Secretary of the EHP at the DOH, are both sued in their official capacities.[5] (Docket No. 7 ¶¶ 13, 16.) Plaintiff cannot maintain claims for monetary damages against them in their official capacities. Also, Plaintiff does not seek any injunctive or declaratory relief against Rius and Carazo in their official capacities. Id. at 10-11. Thus, the Court **GRANTS** Defendants' motion for summary judgment of all claims against Rius and Carazo in their official capacities.

---

[4] Plaintiff does not counter Defendants' Eleventh Amendment argument in his Opposition. (See Docket No. 76.)

[5] Plaintiff also sues Carazo in his individual capacity. (Docket No. 7 ¶ 13.)

6

**Civil No. 14-1372 (GAG)**

Defendants Carazo, Padilla and Rivera also raise the defense of qualified immunity, arguing that Plaintiff fails to prove violations of constitutionally-protected rights, and that the Defendants' good-faith actions were in accordance with law and did not deprive Plaintiff of any "clearly established" federal right. (Docket No. 67 at 19-22.)

In evaluating qualified immunity, the Court must determine whether Plaintiff was deprived of a federal right, whether the right was "clearly established" at the time of the alleged action or inaction, and if so, whether an objectively reasonable official would have believed that the action taken violated that "clearly established" federal right. Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 26-27 (1st Cir. 2007). It is well-settled that a plaintiff's constitutional right to be protected from "politically-motivated changes in work conditions and responsibilities" is well-established. Davila-Torres v. Feliciano-Torres, 924 F. Supp. 2d 359, 370 (D.P.R. 2013) (citing Acevedo-Garcia v. Vera-Monroig, 204 F.3d 1, 6 (1st Cir. 2000)). Similarly, a public employee who has a constitutionally protected property interest in his employment enjoys a clearly-established Fourteenth Amendment right to due process prior to discharge. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985). A reasonable official would believe that taking adverse employment actions motivated by political animus and discharge of a public employee with a legitimate property interest in his position without due process violate these constitutional rights. Therefore, Defendants are not entitled to qualified immunity.

B.  First Amendment Political Discrimination Claim

The First Amendment prohibits government officials from taking "adverse employment action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 13

7

(1st Cir. 2011).  A *prima facie* case of political discrimination based on the First Amendment consists of four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant had knowledge of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." Garcia-Gonzalez v. Puig-Moralez, 761 F.3d 81, 96 (1st Cir. 2014).

Once Plaintiff demonstrates these *prima facie* elements, the burden shifts to Defendants to present a non-discriminatory reason for the adverse employment action. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  Under this burden-shifting framework, Defendants must prove, by a preponderance of the evidence, the alleged adverse employment action would have taken place regardless of Plaintiff's political affiliation. Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993). Plaintiff can ultimately still prevail by demonstrating that the proffered non-discriminatory reason was mere pretext. Padilla-Garcia v. Guillermo Rodríguez, 212 F.3d 69, 77 (1st Cir. 2000).  Ultimately, summary judgment is only warranted if Defendants' "evidentiary proffer compelled the finding that political discrimination did not constitute a 'but for' cause for the adverse employment action." Mendez-Aponte v. Puerto Rico, 656 F. Supp. 2d 277, 285 (D.P.R. 2009).

The Court finds that genuine issues of material fact exist as to the second and fourth elements of Plaintiff's claim, precluding summary judgment.  The Court will address each in turn.

1. Knowledge

The First Circuit has recognized that political discrimination often turns on an employer's cloaked motives that can be hard for the employee to prove. Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 7 (1st Cir. 2015).  Thus, knowledge may be inferred from circumstantial evidence. See, e.g., Martínez-Vélez v. Rey-Hernández, 506 F.3d 32, 44 (1st Cir. 2007) (holding that a

reasonable jury could infer that the defendant was aware of the plaintiff's affiliation with the NPP based on testimony that the plaintiff "spoke openly about her political views and sat in the NPP portion of the de facto segregated cafeteria."). However, knowledge is not imputed when a plaintiff only alleges that he is an active member of a political party and that his political affiliation is well known. Rivera Feliciano v. State Ins. Fund Corp., 652 F. Supp. 2d 170, 186-87 (D.P.R. 2009) (citations omitted).

In this case, Plaintiff contends that Defendants knew of his NPP affiliation because he actively participated in NPP activities and rallies, worked as a NPP polling officer, spoke with Padilla and Carazo about his affiliation with the NPP, and is associated with a group of NPP public servants. (Docket No. 68-17 at 19.) Though Defendants dispute that they knew of Plaintiff's political affiliation, they do not produce contradicting evidence, merely arguing that Plaintiff's claim is based on sheer speculation. (Docket No. 90 ¶ 8.) Therefore, Plaintiff has met his burden to establish a genuine issue of fact as to whether Defendants knew of Plaintiff's political affiliation. Furthermore, this dispute is material as it bears on an essential element of Plaintiff's First Amendment claim.

2. Adverse Employment Action

Defendants contend that Plaintiff did not suffer adverse employment actions as a matter of law because termination of the Mayagüez supervisor position and reassignment to his original permanent position as Aguadilla regional supervisor, with unchanged salary, are insufficient to satisfy the element. (Docket No. 68 ¶¶ 56, 59, 64.) The Court disagrees. Pursuant to the Public Service Human Resources Administration Act of August 3, 2004 ("Law 184"), P.R. LAWS ANN. tit. 3, § 1464a, Plaintiff was entitled to a salary adjustment for performing the supervisory

**Civil No. 14-1372 (GAG)**

responsibilities associated with the temporary Mayagüez appointment.[6]  Law 184 provides in pertinent part:

> The employee working in an acting capacity may be relieved from his/her acting capacity at any time as determined by the director of the department or office . . . [when relieved] the employee shall return to his/her previous job and receive the salary he/she earned before working in acting capacity, except when the employee has performed supervisory functions in acting capacity for twelve or more months. . . [then] the employee *shall* be granted a salary raise equal to a compensation rate in his/her job.

P.R. LAWS ANN. tit. 3, § 1464a (emphasis added).

Though Plaintiff is not entitled to continued employment as Mayagüez supervisor, he was entitled to a salary increase under the statute for performing supervisory functions in Mayagüez for nearly four years.  The parties do not dispute Defendants' failure to compensate Plaintiff for these additional supervisory duties.  (Docket Nos. 68-17 at 126; 95-2.)  Therefore, the Court again finds that Plaintiff has presented evidence of an adverse employment action.  (Docket Nos. 68-14 at 1; 68-16 at 1.)

### 3. Substantial or Motivating Factor

Plaintiff must present evidence showing that his political affiliation was a substantial or motivating factor for the adverse employment action.  Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 239 (1st Cir. 2010).  This element is often described as a showing of discriminatory animus. Because "it is rare that a 'smoking gun' will be found in a political discrimination case, . . . circumstantial evidence alone may support a finding of political discrimination."  Id. at 240. Therefore, the Court may conclude that political affiliation was a substantial or motivating factor

---

[6] Plaintiff cited Law No. 84 in his Deposition to support his assertion that interim assignments cannot exceed one year.  (Docket No. 68-17 at 75.)   The Court believes that the governing legal authority is actually Law 184.

for an adverse employment action by drawing inferences from the universe of factual allegations at the summary judgment stage. Roderíguez v. Mun. of San Juan, 659 F.3d 168, 178 (1st Cir. 2011).

The central dispute in this case is the substance of the meeting between Plaintiff and Carazo on May 1, 2013, which bears on whether Plaintiff's termination and reassignment were motivated by political animus. Plaintiff asserts that Carazo told him the PDP-affiliated Mayor wanted the DOH regional supervisor to be a PDP supporter. (Docket Nos. 77 ¶ 1; 77-1 at 7.) Conversely, Defendants maintain that Carazo told Plaintiff that he wanted to transfer Plaintiff back to his original position as Aguadilla supervisor because Carazo thought that one supervisor per region would be more efficient. (Docket No. 90 ¶ 1.) These contradicting accounts of the meeting constitute a material dispute of fact, requiring a jury to make findings of fact and credibility determinations.

### 4. The Mt. Healthy Defense

Once Plaintiff demonstrates the *prima facie* elements of his First Amendment claim, then Defendants must show that they would have taken the same adverse employment action regardless of Plaintiff's political affiliation in order to avail themselves of the affirmative defense commonly referred to as the Mt. Healthy Defense. See Padilla-Garcia, 212 F.3d at 74. The ultimate burden then falls on Plaintiff to show that Defendants' articulated reason was mere pretext. Id. Still, "on summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a question for a fact-finder as to pretext and discriminatory animus." Fennell, 83 F.3d at 535.

Defendants contend that Plaintiff's termination as Mayagüez supervisor and reassignment as Aguadilla supervisor were not politically motivated. (Docket No. 67 at 15-16.) Rather, the

express language of the appointment letter in September, 2011 describes only a temporary assignment resulting from Rodríguez's unexpected activation to the National Guard. (Docket Nos. 68 ¶¶ 41, 44, 45-46; 68-14 at 1.) Defendants argue that termination of Plaintiff's temporary assignment was within the discretion of the DOH. (Docket No. 68 ¶ 58) Defendants also contend that Carazo appointed Padilla interim Mayagüez supervisor when Plaintiff was away for treatment because Padilla was already Deputy Mayagüez Supervisor, and therefore, the most qualified individual for the interim supervisor position. (Docket No. 68-21 ¶ 8.)

Plaintiff has presented evidence demonstrating that Defendants' proffered non-discriminatory reasons were mere pretext. Plaintiff presented evidence that Carazo stated his intent to replace Plaintiff due to local political pressure a few months after the regime change from NPP to PDP. (Docket No. 77 ¶ 1.) Also, Defendants do not present evidence justifying their failure to award Plaintiff a salary raise to compensate him for additional work as mandated under Law 184. Thus, Plaintiff has met his burden to rebut Defendants' non-discriminatory reasons for the adverse employment action. These issues of fact preclude summary judgment. Thus, Defendants motion for summary judgment as to Plaintiff's First Amendment claim is **DENIED**.

### C. Fourteenth Amendment Due Process Claim

Defendants also seek summary judgment of Plaintiff's claim that Defendants violated his Fourteenth Amendment right to due process by terminating his position as Mayagüez regional supervisor before the PSAC rendered a decision on his appeal. (Docket Nos. 76 at 11; 68 ¶ 37.) Specifically, Defendants argue that Plaintiff has no property interest in the position of Mayagüez regional supervisor. (Docket No. 67 at 17.)

A procedural due process claim brought pursuant to Section 1983 requires a deprivation of a property interest by defendants acting under color of state law, without constitutionally adequate

process. See Marrero-Gutierrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007). "The Due Process Clause of the Fourteenth Amendment protects government employees who possess property interests in continued public employment." Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005) (citing Cleveland Bd. of Educ., 470 U.S. at 541). In order to determine whether public employees possess such a property right, the Court examines local law and the terms and conditions of the employment arrangement. See Ruiz-Casillas, 415 F.3d at 134.

In this case, Plaintiff's appointment to the position of Mayagüez supervisor was temporary rather than permanent. (Docket Nos. 68-14 at 1; 68-16 at 1.) As stated above, pursuant to Law 184, Plaintiff is not entitled to continued employment in an acting or temporary capacity. Under the statute, he "may be relieved from his acting capacity at any time as determined by the director of the department or office." P.R. LAWS ANN. tit. 3, § 1464a. Thus, Plaintiff has no constitutionally protected property interest in this position. The Court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's Fourteenth Amendment due process claim.

**IV.    State Law Claims**

Defendants also seek summary judgment of Plaintiff's claims under Puerto Rico state law, including Law 100, Article 1802 and the CSWAA. (Docket No. 67 at 22.) However, the Court notes that Defendants provide no law or argument suggesting that summary judgment is appropriate. Rather, defendants rely on the truism that the Court may decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Id. Because Defendants have provided no reason to believe any or all of the remaining Puerto Rico state law claims are unrelated to Plaintiff's § 1983 claim, which survives summary judgment, or that they fail as a matter of law, the Court **DENIES** the motion for summary judgment as to the Plaintiff's state law claims.

**Civil No. 14-1372 (GAG)**

## V. Conclusion

For the reasons stated above, Defendants' motion for summary judgment at Docket No. 67 is **GRANTED IN PART and DENIED IN PART**.  Defendant's motion for summary judgment as to Plaintiff's First Amendment political discrimination claim and Puerto Rico state law claims is **DENIED**.  Defendant's motion for summary judgment as to Plaintiff's Fourteenth Amendment due process claim is **GRANTED.**

This case is hereby referred to Magistrate Judge Marcos López for the holding of a pre-trial/settlement conference. The parties shall file a *joint*, proposed pre-trial order on or before April 29, 2016.  The parties shall engage in further, good-faith negotiations prior to the conference, as Judge López may issue any other settlement directives. The Court hopes that the instant ruling will aid the parties in reaching an acceptable compromise that will end this litigation.

**SO ORDERED.**

In San Juan, Puerto Rico, on this 23rd day of March, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

14